IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSICA ELAINE WOLFE               :          CIVIL ACTION
                                   :
        v.                         :
                                   :
DAVID DIGUGLIELMO, et al.          :          NO.  06-5261

## REPORT AND RECOMMENDATION

**L. Felipe Restrepo**                                    **January 25, 2008**
**United States Magistrate Judge**

Presently before the Court is a Petition for Writ of Habeas Corpus filed by Jessica Elaine Wolfe[1] pursuant to 28 U.S.C. § 2254.  Petitioner is currently incarcerated at the State Correctional Institution in Graterford, Pennsylvania.  For the reasons which follow, the habeas petition should be denied and dismissed.

1.    **Procedural History**

In July 1996, pursuant to a plea agreement, petitioner was convicted of raping Wolfe's eight-year-old stepdaughter and sentenced to five to fifteen (5-15) years in prison.  See Inmates of Pa. DOC, 484 F. Supp.2d at 360; see also Hab. Pet. (Doc. No. 3) ¶¶ 1-5.  Petitioner alleges that a direct appeal from the judgment of sentence was not filed.  Id. ¶ 8.

Wolfe first appeared before the Pennsylvania Board of Probation and Parole (alternatively "Board" or "Parole Board") on March 14, 2001, and parole was denied.  See Wolfe v. Pa. DOC,

---

1.  The Court in a previous civil rights action filed by Wolfe described Wolfe as "a transgender person" whose "legal name was changed from James Elliott Wolfe to Jessica Elaine Wolfe."  See Inmates of Pa. DOC v. Corbett, 484 F. Supp.2d 359, 360 (E.D. Pa. 2007).

334 F. Supp.2d 762, 766 (E.D. Pa. 2004).  The Notice of the Board's Decision (also known as a

"Green Sheet") indicated that the reason for the denial of parole was that "the fair administration

of justice cannot be achieved through [petitioner's] release on parole."  See Inmates of Pa. DOC ,

484 F. Supp.2d at 361.  The Board's Notice also indicated that the next review would take place

in April 2002 and explained that compliance with the Prescriptive Program Plan would be

considered at the next review.[2]  See Wolfe, 334 F. Supp.2d at 766.

Wolfe appeared before the Board again on September 4, 2002, and parole was denied

once more.  Id.  The Notice of the Board's Decision stated that "the fair administration of justice

cannot be achieved through [petitioner's] release on parole."  Id.

In July 2004, Wolfe was denied parole for a third time.  See Inmates of Pa. DOC , 484 F.

Supp.2d at 362.  The Board's Notice gave the following reasoning: "your best interests do not

justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be

injured if you were paroled/reparoled."  Id.

On September 1, 2006, the Board denied Wolfe parole again.  The Notice of the Decision

indicates that the Board determined: "[Petitioner's] best interests do not justify or require

[petitioner] being paroled/reparoled; and, the interests of the Commonwealth will be injured if

[petitioner] were paroled/reparoled."  See Notice of Bd. Decision dated 9/1/06, at 1 (caps

---

2.  "Each year, an inmate receives both a Prescriptive Program Plan for the upcoming year and a
review of the inmate's compliance with the previous year's plan.  In 1997, 1998, and 2000,
[Wolfe's] Prescription Program Plan recommended participation in a [sex offender treatment
program ('SOP')), and [Wolfe's] review noted [Wolfe's] past refusal to do so."  Inmates of Pa.
DOC, 484 F. Supp.2d at 361.  In 2001, 2002, and 2004 Wolfe again received Prescription
Program Plans and reviews, which were identical in all material respects to the previous plans.
In each case, the prison did not recommend parole because, according to Wolfe, an SOP was not
completed.  See id. at 361-62.

omitted).  The "reasons for the Board's decision include[d]" the following: (1) petitioner's "minimization/denial of the nature and circumstances of the offense(s) committed;" (2) petitioner's "refusal to accept responsibility for the offense(s) committed;" (3) petitioner's "lack of remorse for the offense(s) committed;" (4)petitioner's "unacceptable compliance with prescribed institutional programs;" (5) petitioner's "need to participate in and complete additional institutional programs;" and (6) petitioner's "interview with the hearing examiner and/or Board member."  Id. (caps omitted).

On May 3, 2002, after the Board's initial denial of parole, and before the second denial, Wolfe brought a civil rights action in this Court under 42 U.S.C. § 1983, "on behalf of [Wolfe] and all similarly situated inmates of the Pennsylvania Department of Corrections ('DOC')," against numerous individual and institutional defendants.  In that civil action, Wolfe alleged violations of the prohibition against self-incrimination protected by the Fifth and Fourteenth Amendments of the Constitution, retaliation for the exercise of constitutional rights in violation of the First, Fifth, and Fourteenth Amendments, and violations of Wolfe's rights against ex post facto laws.  See Wolfe, 334 F. Supp.2d at 765.

By Memorandum and Order dated August 26, 2004, the Honorable Eduardo C. Robreno granted the defendants' motion to dismiss with regard to all of Wolfe's claims except the ex post facto claim against the "individual members of the Parole Board and the chairpersons of the Parole Board" and Wolfe's First Amendment retaliation claim against certain individuals.  See Wolfe, 334 F. Supp.2d at 776.  On April 25, 2007, Judge Robreno granted summary judgment in favor of the defendants on "Wolfe's two remaining claims."  See Inmates of Pa. DOC , 484 F. Supp.2d at 374.  Specifically, Judge Robreno denied Wolfe's following claims: "(1) the Parole

Board violated the Ex Post Facto Clause by applying the wrong standard to her parole application and[] (2) [DOC] officials improperly retaliated against [Wolfe], causing the Parole Board to reject her application." Id.

According to petitioner, on November 15, 2004, after the filing of the aforementioned civil rights action, Wolfe filed in the Commonwealth Court of Pennsylvania a petition challenging the legality of actions of the Board.[3] See Hab. Pet. (Doc. No. 3) ¶ 11. Wolfe states that the Commonwealth Court dismissed that petition on February 1, 2005, id. ¶ 11(a)(5)-(6); see Wolfe v. Pa. Bd. of Probat'n and Parole ("PBPP"), No. 772 M.D. 2004, Order (Pa. Commw. Feb. 1, 2005), and that the Supreme Court of Pennsylvania denied allowance of appeal on September 15, 2005, id. ¶ 11(a)(7); see Wolfe v. PBPP, No. 772 M.D. 2004, Order (Pa. Feb. 22, 2005).

On November 30, 2006, the Clerk of this Court received petitioner's federal habeas petition (hereinafter "original habeas petition" (Doc. No. 1)). See Orig. Hab. Pet. (Doc. No. 1) at 1. In that it was not filed on the proper form, the Honorable Mary A. McLaughlin on December 8, 2006 directed the Clerk of Court to furnish petitioner with the current standard form. Judge McLaughlin further ordered that Wolfe complete the form as directed by Local Rule of Civil Procedure 9.3(b) and return it to the Clerk of Court within thirty (30) days to avoid dismissal of this habeas action.

On December 27, 2006, the Clerk of Court received the habeas petition filed on the proper form (Doc. No. 3). See Hab. Pet. (Doc. No. 3) at 1. Although the habeas petition is far from a model of clarity, petitioner appears to challenge the Board's denial of parole as a violation

---

3. According to the habeas petition, Wolfe filed a petition for writ of mandamus and was ordered to resubmit it as a petition for review. See Hab. Pet. (Doc. No. 3) ¶ 11(a)(2).

4

of Wolfe's right against ex post facto laws,[4] a violation of Wolfe's Fifth Amendment right against self-incrimination, a violation of the Emoluments Clause, and a violation of the Contracts Clause.  See Hab. Pet. (Doc. No. 3) ¶ 12(A)-(D); see also Orig. Hab. Pet. (Doc. No. 1) (alleging that petitioner has been wrongfully "denied parole 4 times").[5]  In response, the Attorney General of Pennsylvania contends that Wolfe's claims are untimely, moot, unexhausted, barred by the doctrines of res judicata and collateral estoppel, and without merit.  See Respondent's Br. at 3-12.

2.   **Discussion**

A.   **Timeliness**

Section 101 of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), amended 28 U.S.C. § 2244 to impose a one-year period of limitation on applications for writs of habeas corpus by persons in state custody.  See 28 U.S.C. § 2244(d)(1).  Pursuant to AEDPA, the limitation period begins to run from the latest of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

_____

4.  Specifically, construing the pro se petition liberally, see Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), Wolfe appears to be alleging that when the Board denied parole it violated Wolfe's right against ex post facto laws by applying: post-1996 amendments to Pennsylvania's parole statute; the Registration of Sexual Offenders Act ("Megan's Law"), and amendments thereto ("Megan's Law II"); and the Violent Offenders Act of 1998.  See Petr.'s Reply Br. at 4-5.

5.  Although it appeared from the habeas petition that Wolfe was challenging the lawfulness of the convictions in addition to the adverse parole decision, see Report and Recommendation ("R&R") filed 2/22/07, at 2 (citing Hab. Pet. (Doc. No. 3) ¶ 12(D)), Wolfe has since represented that "[p]etitioner is **only** challenging [the allegedly] arbitrary **parole decision**, not petitioner's sentence."  See Petr.'s Objections (Doc. No. 11) ¶ 1 (emphasis added).

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Section 2244(d)(1)'s one-year limitation period for all petitions filed by persons in custody pursuant to a state court judgment applies to petitions challenging administrative parole decisions, in addition to petitions challenging the lawfulness of the underlying convictions.  See Shelby v. Bartlett, 391 F.3d 1061, 1065 (9th Cir. 2004) (1-year period of limitation applies to habeas petitions challenging state prison administrative decisions); Wade v. Robinson, 327 F.3d 328, 331-32 (4th Cir. 2003), cert. denied, 540 U.S. 912 (2003) (1-year period of limitation applies to parole decisions); Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 280 (2d Cir. 2003) (same); Kimbrell v. Cockrell, 311 F.3d 361, 363 (5th Cir. 2002); see also McAleese v. Brennan, 483 F.3d 206, 213 n.9 (3d Cir. 2007) (noting that "most courts of appeals that have addressed the issue have held that a petition challenging an administrative decision regarding parole or imposing discipline is subject to section 2244(d)(1)").  Here, Wolfe has represented that the habeas petition does not challenge the underlying convictions or sentence, but rather the denial of parole and thus the administration of Wolfe's sentence.  See supra note 5; see, e.g., Benchoff v. Colleran, 404 F.3d. 812, 813 (3d Cir. 2005) (parole claims challenge administration of a petitioner's sentence).

Since the judgment of conviction became final in this case long before even the first denial of

parole, AEDPA's period of limitation began to run "the date on which the factual predicate of the

claim or claims presented could have been discovered through the exercise of due diligence."

See § 2244(d)(1)(D).

The Board's denial of parole constitutes the "factual predicate" of a parole claim raised in

a habeas petition.  See, e.g., McAleese, 483 F.3d at 217 ("a parole denial . . . can, and in this case

does, constitute the 'factual predicate' of a habeas corpus claim under section 2254"); Kimbrell,

311 F.3d at 363 (one-year habeas statute of limitations starts on the date of the administrative

hearing); DeFoy v. McCullough, 2007 WL 2903922, at *5 (W.D. Pa. Sept. 28, 2007) ("the

limitations period begins to run from the date of the Board's decision denying parole").

Therefore, to the extent that petitioner challenges each of the four aforementioned denials of

parole, see, e.g., Orig. Hab. Pet. (Doc. No. 1) (alleging that Wolfe has been wrongfully "denied

parole 4 times"), at the latest, Wolfe had one year from each of the Board's denials to file a §

2254 petition challenging each of these respective denials.[6]  See McAleese, 483 F.3d at 217;

---

6.  Arguably, in that Wolfe is claiming that the denial of parole was improper due to, among
other things, the application of ex post facto laws and the requirement that an SOP be complied
with, the parole denials after the initial denial (including the 2006 denial of parole) were "not a
necessary factual predicate" to Wolfe's claims.  See Benchoff, 404 F.3d at 818 (viewing the
"factual predicate" of a claim in the context of determining whether a petition should be
considered "second or successive").  It would appear that "even one of the parole denials would
have been sufficient for [Wolfe] to formulate [Wolfe's] complaint" and "[a]s a result, we can
fairly say that [petitioner] knew of all the facts necessary to raise" the parole claims well more
than a year before filing the habeas petition.  See id. (internal quotation marks omitted) (in the
context of the abuse-of-the-writ doctrine); see also Queen v. Fed. BOP, 179 Fed. Appx. 838, 839
(3d Cir. 2006) ("We discern no difference between the claims raised in [the petitioner's] current
§ 2241 petition and those raised in prior habeas petitions.  But even if the claims in [the
petitioner's] § 2241 petition could be construed as 'new,' they are based on a factual predicate
long known to [the petitioner] and thus they could have been raised in earlier habeas petitions.")
(in the abuse-of-the-writ context).  Here, Wolfe has long known that of the denial of parole based

Kimbrell, 311 F.3d at 363; DeFoy, 2007 WL 2903922, at *5; see also Fielder v. Varner, 379 F.3d

113, 118 (3d Cir. 2004), cert. denied, 543 U.S. 1067 (2005) (AEDPA's statute of limitations

should be applied on a claim-by-claim basis); Slutzker v. Johnson, 393 F.3d 373, 382 (3d Cir.

2004) (citing Fielder) (same).

      Wolfe did not file the habeas petition until, at the earliest, November 20, 2006.[7]  In that

the habeas petition was filed more than one year after the first three denials of parole (in 2001,

2002, and 2004), to the extent that Wolfe challenges those three denials, see, e.g., Orig. Hab. Pet.

(Doc. No. 1) at 1 (complaining of being "denied Parole 4 times because of wrongfully applied Ex

Post Facto laws"), the habeas claims are clearly time-barred under AEDPA's statute of

limitations.[8]  See Miller v. N.J. State DOC, 145 F.3d 616, 617-18 (3d Cir. 1998); Burns, 134

F.3d at 111.

      "The statute of limitations for federal habeas corpus petitions is subject to two tolling

exceptions: (1) statutory tolling during the time a 'properly filed' application for state post-

conviction review is pending in state court and (2) equitable tolling, a judicially crafted

---

on, among other things, lack of compliance with the SOP and the allegedly improper application
of ex post facto laws.

7.  In Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998), the Court of Appeals for the Third
Circuit held that a pro se prisoner's federal habeas petition is deemed "filed" at the moment it is
delivered to prison officials for mailing to the district court.  Here, petitioner signed the original
habeas petition on Nov. 20, 2006.  See Orig. Hab. Pet. (Doc. No. 1) at 1.  Therefore, the petition
could not have been delivered to prison officials for mailing any earlier than that date.

8.  To the extent petitioner argues that the four denials of parole constitute a "continuing
violation," a similar argument was rejected by the Third Circuit in McAleese, 483 F.3d at 217-19
(observing that the petitioner failed to point to any case applying a continuing violations theory in
the context of tolling AEDPA's limitations period to extend the timeliness requirement, and in
any event, the successive denials of parole "would not constitute continuing violations").

exception."  Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003) (citing Jones v. Morton, 195

F.3d 153, 158 (3d Cir. 1999)), cert. denied, 540 U.S. 921 (2003).  With respect to statutory

tolling, § 2244(d)(2) provides in relevant part that "[t]he time during which a properly filed

application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward any period of limitation under this

subsection."  28 U.S.C. § 2244(d)(2).

In Merritt, the Third Circuit reiterated "the two general requirements for equitable tolling:

(1) that 'the petitioner has in some **extraordinary** way been **prevented** from asserting his or her

rights;' and (2) that the petitioner has shown that 'he or she exercised **reasonable diligence** in

investigating and bringing [the] claims.'"  Merritt, 326 F.3d at 168 (citing Fahy v. Horn, 240 F.3d

239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001)) (emphasis added); see also Pace v.

DiGuglielmo, 125 S. Ct. 404, 1814 (2005) (observing that a litigant seeking equitable tolling

bears the burden of establishing diligence and that "some extraordinary circumstance stood in his

way").  "The law is clear that courts must be sparing in their use of equitable tolling."  See Jones

v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (quoting Seitzinger v. Reading Hosp. & Med. Ctr.,

165 F.3d 236, 239 (3d Cir. 1999)).

Even assuming that Wolfe's petition for review filed in Pennsylvania's Commonwealth

Court and the subsequent request for allowance of appeal in the Supreme Court of Pennsylvania

tolled the statute of limitations, Wolfe's habeas petition was filed after the expiration of the one-

year period of limitation for any claims challenging the first three parole denials.  Pennsylvania's

Supreme Court denied allowance of appeal on September 15, 2005, see Jessica Elaine Wolfe v.

PBPP, No. 329 MAL 2005, Order (Pa. Sept. 15, 2005), and Wolfe's habeas petition was filed

more than one year after that date.

Furthermore, petitioner fails to allege circumstances which **prevented** in some **extraordinary** way the filing of a timely habeas petition challenging the first three parole denials.  See United States v. Ramsey, 1999 WL 718079, at *2 (E.D. Pa. Aug. 26, 1999); Ego-Aguirre v. White, 1999 WL 155694, at *2 (N.D. Cal. Mar. 12, 1999); see also Davis v. Artuz, 2001 WL 199454, at *3 (S.D. N.Y. Feb. 28, 2001) ("the petitioner must show that circumstances actually impeded the ability to file a timely petition").  Moreover, **even if** the petition had alleged extraordinary circumstances preventing the filing of the petition, the petition fails to allege circumstances indicating that **reasonable diligence** was exercised in filing the petition with regard to challenging the first three denials.  See, e.g., Pace, 125 S. Ct. at 1815; Schlueter v. Varner, 384 F.3d 69, 78 (3d Cir. 2004), cert. denied, 544 U.S. 1037 (2005).  Since petitioner failed to file the § 2254 petition within the one-year period of limitation, the petition was not timely filed with regard to any claims challenging the parole denials in 2001, 2002, and 2004.[9] See Miller, 145 F.3d at 617-18; Burns, 134 F.3d at 111.


### B.   Mootness

In addition to being time-barred, as respondent argues, any challenges to denials of parole prior to the most recent denial also appear to be moot.  In particular, since the appropriate relief in this case would be a new hearing before the Board, and since the last parole denial occurred in 2006, any claims challenging the denial of parole prior to the 2006 denial of parole are moot.

---

9.  Arguably, all of the claims raised in Wolfe's habeas petition are time-barred.  See supra note 6.  However, as explained below, petitioner's claims are without merit in any event.

See DeFoy, 2007 WL 2903922, at *5 (finding claims challenging parole denials prior to the most recent denial moot); McCole v. PBPP, 2006 WL 2792212, at *2 (W.D. Pa. Sept. 26, 2006) (citing cases) (finding that challenges to earlier parole denials were moot and thus limiting review to the most recent parole decision); Taylor v. PBPP, 2004 WL 3185309, at *4 n.1 (E.D. Pa. Dec. 30, 2004) (finding claims challenging previous decisions of the Parole Board moot as the "latest decision [of the Board] is the only one ripe for consideration"), approved and adopted, 2005 WL 331733, at *1 (E.D. Pa. Feb. 8, 2005).  Consequently, "it is appropriate to limit consideration to whether the **most recent decision** [denying parole] runs afoul of" the Constitution.  See Burkholder v. Wolfe, 2007 WL 90427, at *7 n.10 (M.D. Pa. Jan. 9, 2007) (emphasis added); see also McCole, 2006 WL 2792212, at *2; Taylor, 2004 WL 3185309, at *4 n.1.

### C.   Exhaustion of State Remedies

"It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)), cert. denied, 532 U.S. 919 (2001); Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993).  In order for a federal habeas petitioner to satisfy the exhaustion requirement, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); see Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001), cert. denied, 535 U.S. 957 (2002).  Title 28 U.S.C. § 2254(c) expressly provides that "[a]n applicant shall not be deemed to

have exhausted the remedies available in the courts of the state, within the meaning of this

section, if he has the right under the law of the state to raise, by any available procedure, the

question presented."

The petitioner has the burden of proving all facts entitling the petitioner to a discharge

from custody as well as demonstrating that all procedural requisites entitling the petitioner to

relief have been met.  Brown v. Cuyler, 669 F.2d 155, 157 (3d Cir. 1982).  Therefore, "[t]he

habeas petitioner bears the burden of proving that he [or she] has exhausted available state

remedies."  Toulson, 987 F.2d at 987.

Thus, before a state prisoner may be granted habeas corpus relief in federal court, all

available state remedies must be exhausted, and the state must be afforded a meaningful

opportunity to consider his claims.  28 U.S.C. § 2254(b); Coady v. Vaughn, 251 F.3d 480, 488

(3d Cir. 2001) (citing Vasquez v. Hillery, 474 U.S. 254, 257 (1986)).  In Parker v. Kelchner, 429

F.3d 58, 61 (3d Cir. 2005), the Third Circuit found that a remedy may be available in the

Pennsylvania courts for a claim alleging that the denial of parole violated the Ex Post Facto

Clause.  In DeFoy v. McCullough, 393 F.3d 439 (3d Cir.), cert. denied, 125 S. Ct. 2970 (2005),

the Court of Appeals found that a state remedy "is **not available** for Pennsylvania state prisoners

seeking to challenge the denial of their parole on constitutional grounds other than the Ex Post

Facto Clause."  Id. at 445 (emphasis added).  Therefore, the Court held that "claims of

constitutional violations in the denial of parole [other than ex post facto claims] in Pennsylvania

**need not be presented to the state courts** via a petition for writ of mandamus in order to satisfy

the requirement of exhaustion."  Benchoff, 404 F.3d at 819 n.5 (quoting DeFoy, 393 F.3d at 445)

(emphasis added).  Here, under DeFoy, Wolfe did not need to seek relief in the Pennsylvania

courts on any parole claims other than the ex post facto claims.  See Benchoff, 404.F.3d at 819 n.5 (quoting DeFoy, 393 F.3d at 445).

Wolfe's petition filed in the Commonwealth Court of Pennsylvania was filed prior to the 2006 denial of parole.  Therefore, that petition did not specifically challenge the 2006 denial of parole.  Thus, respondent argues that, at a minimum, petitioner's ex post facto claims challenging the 2006 denial of parole are unexhausted.  Since Wolfe fails to show that the present ex post facto claims challenging the 2006 denial of parole were raised in the Pennsylvania courts in a petition to the Commonwealth Court, Wolfe has failed to properly satisfy the exhaustion requirement with regard to these claims.  Although petitioner's ex post facto claims challenging the 2006 denial of parole are unexhausted, courts in this circuit have denied on their merits unexhausted claims where such claims were clearly without merit.  See § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Wead v. Sobina, 2007 WL 4124491, at *5 (E.D. Pa. Nov. 20, 2007) ("exhaustion is of no consequence because the claim is clearly meritless");  Smythe v. DiGuglielmo, 2007 WL 2972586, at *5 (E.D. Pa. Oct. 10, 2007) ("although I conclude that petitioner's ex post facto claims [challenging the Board's denial of parole] . . . are unexhausted, I will nevertheless deny them on their merits"); Parker v. Winder, 2005 WL 2100690, at *2 (M.D. Pa. Aug. 30, 2005) ("Notwithstanding the failure to exhaust [petitioner's ex post facto claims challenging the Board's parole decision], the court will consider the petition as the claim presented is clearly without merit."); see also Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) (citing § 2254(b)(2)) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion."); Powell v. Meyers, 214 Fed.

13

Appx. 197, 198 (3d Cir. 2007) (addressing the merits of a habeas claim, pursuant to § 2254(b)(2), despite "grave doubts" about whether the petitioner's claim was fairly presented to the state court), cert. denied, 127 S. Ct. 1890 (2007); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) (finding that "it is apparent that the claims in question lack merit," the Court observed that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted"), cert. denied, 546 U.S. 1208 (2006).  In this case, for the reasons explained below, Wolfe's claims challenging the 2006 denial of parole[10] are clearly without merit.

### D.    Ex Post Facto Claims

As in this petition, Wolfe alleged in the previous civil rights action filed in this Court that "the Parole Board violated the Ex Post Facto Clause by applying the wrong standard to [Wolfe's] parole application."  See Inmates of Pa. DOC, 484 F. Supp.2d at 360.  In that Wolfe only challenged the denial of parole **prior** to the 2006 denial, it does not appear that the Court specifically addressed the 2006 denial which is challenged here.[11]  See, e.g., Inmates of Pa. DOC, 484 F. Supp.2d at 360.  However, the reasoning applied by Judge Robreno to Wolfe's ex post

---

10.  Wolfe has represented that the habeas petition is "**only** challenging . . . [the] parole decision."  See Petr.'s Objections (Doc. No. 11) ¶ 1 (emphasis added).

11.  Respondent argues that in light of the claims raised in Wolfe's previous civil rights action, res judicata and collateral estoppel bar petitioner's claims.  However, "[p]rinciples of res judicata are . . . not wholly applicable to habeas corpus proceedings."  See Preiser v. Rodriguez, 411 U.S. 475, 497 (1973); see also Malloy v. Fauver, 1989 WL 200956, at *7 (D. N.J. Dec. 20, 1989) (citing Preiser, 411 U.S. at 497) ("the doctrine of res judicata does not apply to habeas corpus proceedings.").  Furthermore, as explained above, in Wolfe's civil rights action, Judge Robreno addressed Wolfe's claims challenging the denials of parole prior to 2006 and not claims challenging Wolfe's 2006 denial of parole.

facto claims in the civil rights action is instructive in this action.[12]

The Ex Post Facto Clause "applies to a statute or policy change which 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" Richardson v. PBPP, 423 F.3d 282, 287 (3d Cir. 2005) (quoting Cal. DOC v. Morales, 514 U.S. 499, 506 n.3 (1995)); Smythe, 2007 WL 2972586, at *8 (quoting Richardson).  Thus, the Ex Post Facto Clause "prohibit[s] the application of post-conviction laws to prisoners that would result in a significant increase in the chances of prolonged incarceration."  Mickens-Thomas v. Vaughn, 321 F.3d 374, 391 (3d Cir. 2003) (citing Garner v. Jones, 529 U.S. 244, 251 (2000)), cert. denied, 540 U.S. 875 (2003).  "[A]n offender, prior to his conviction and sentencing, is entitled to know not only his maximum possible punishment, but also his or her chances of receiving early release."  Mickens-Thomas, 321 F.3d at 391.

The Third Circuit held in Mickens-Thomas that application of the post-1996 parole

---

12.  Judge Robreno noted: "The **substantive law** of [Wolfe's] ex post facto claim - an inmate's allegation that the Parole Board applied a new, harsher standard to his parole application - is drawn from **habeas corpus** jurisprudence.  Indeed, every reported case to address whether the Pennsylvania Parole Board unconstitutionally applied the post-1996 parole standard to an inmate's parole application has been a habeas corpus case."  Inmates of Pa. DOC, 484 F. Supp.2d at 365 n.13 (emphasis added).  Thus, although Wolfe' previous civil action was a § 1983 case, id., the substantive law applied is similar to that applicable in this case.  It is noted that Wolfe's previous case was at the summary judgment stage where "the Court is required to draw all inferences in favor of [the plaintiff]," id. at 366, and the **defendants** "ha[d] the burden of showing that there [was] no genuine issue of a material fact and that they [were] entitled to judgment as a matter of law," id. at 365 n.13.  However, "in the reported cases in this [ex post facto claim] area, the **habeas petitioner** bears the burden of showing that the application of the post-1996 standard personally disadvantaged [the petitioner] by significantly increasing [the] risk of being denied parole."  Id.  Nevertheless, since the defendants in Wolfe's civil rights action had "put forth evidence that Wolfe would likely not have been paroled under the pre-1996 standard, . . . Wolfe's burden . . . [was] akin to a habeas petitioner's; [Wolfe was required to] point to evidence that [Wolfe] would likely have been paroled under the pre-1996 standard."  Id. at 366 n.15.

standard to inmates sentenced under the pre-1996 standard **may** violate the Ex Post Facto

Clause.[13]  Inmates of Pa. DOC, 484 F. Supp.2d at 364 (citing Mickens-Thomas, 321 F.3d at 386).

In Richardson v. Pennsylvania Board of Probation and Parole, "the Third Circuit clarified the test

to be applied: an inmate must show **both** that the Parole Board **applied** the new parole standard

to her application **and** that application of the new standard **personally disadvantaged** the inmate

by significantly increasing the risk of being denied parole."  Inmates of Pa. DOC, 484 F. Supp.2d

at 364 (citing Richardson, 423 F.3d at 291) (emphasis added); see Smythe, 2007 WL 2972586, at

*8 (citing Richardson).

     Under the second prong of this test, "a retroactive change in law or policy must create a

'sufficient risk of increasing the measure of punishment attached to the covered crimes;' a

'speculative and attenuated possibility . . . increasing the measure of punishment' is not enough."

Richardson, 423 F.3d at 288 (quoting Morales, 514 U.S. at 509); Smythe, 2007 WL 2972586, at

*8 (quoting Richardson).  "[I]t is not enough for a prisoner to show that the Board relied on a

new law or policy.  Rather, he must also adduce some evidence that this new law or policy

disadvantaged him by creating 'a significant risk of increasing his punishment.'"  Richardson,

423 F.3d at 288 (quoting Garner, 529 U.S. at 255); Smythe, 2007 WL 2972586, at *8 (quoting

Richardson).  Thus, "the ultimate question is the effect of the change in parole standards on the

---

13.  "While the pre-1996 statute did not have a specific focus, the post-1996 statute focuses on
the interests of society."  Inmates of Pa. DOC, 484 F. Supp.2d at 364 n.12.  "The pre-1996
policies place significant weight on factors relating to an inmate's potential to adapt to life on the
outside, and on the recommendations of the institutional staff.  The pre-1996 policies suggest that
no single factor should be controlling in a decision to deny parole to an applicant . . . . [A]lthough
the risk of potential danger to the public has always been a factor, it became the controlling
feature of the Board's decision after 1996."  Mickens-Thomas, 321 F.3d at 388; Inmates of Pa.
DOC, 484 F. Supp.2d at 364 (quoting Mickens-Thomas).

individual's risk of increased punishment." Richardson, 423 F.3d at 291; see Smythe, 2007 WL 2972586, at *8.

In Wolfe's previous civil rights action which involved only the parole denials prior to 2006, Judge Robreno determined that although Wolfe was able to satisfy the first prong of the ex post facto analysis at the summary judgment stage of that case, see supra note 11, Wolfe was unable to satisfy the second prong of the analysis.  With regard to which standard was applied by the Board in denying Wolfe parole, Judge Robreno found that: "The Board's language in Wolfe's 2001 and 2002 Green Sheets parrots the language of the post-1996 parole statute."[14] Inmates of Pa. DOC, 484 F. Supp.2d at 365.  Judge Robreno observed that the Third Circuit in Richardson "was clear that the Parole Board's quoting of the post-1996 parole statute in denying an inmate parole is sufficient evidence that the Parole Board improperly applied the new standard in making its determination." Id. at 366 (citing Richardson, 423 F.3d at 292).  Therefore, "draw[ing] all inferences in favor of [Wolfe] at the summary judgment stage," see supra note 12, Judge Robreno concluded that "it is fair to say that the Parole Board applied the post-1996 standard in deciding [Wolfe's] parole application." Inmates of Pa. DOC, 484 F. Supp.2d at 366.

_____

14. Specifically, "[t]he 2001 and 2002 Green Sheets . . . state[d] simply: 'Following an interview and review of your file, the Pennsylvania Board of Probation and Parole has determined that the fair administration of justice cannot be achieved through your release on parole.'" Inmates of Pa. DOC, 484 F. Supp.2d at 365 n.14.  The post-1996 parole statute reads as follows:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall **first and foremost** seek to **protect the safety of the public.**  In addition to this goal, the board shall address input by crime victims and assist in the **fair administration of justice** by ensuring the custody, control and treatment of paroled offenders.

See id. at 361 n.5 (emphasis added).

17

In this habeas case, with regard to the **2006 denial** of parole, "it is not even clear that [petitioner] has met the first prong of the analysis, i.e., shown that the Board used new standards, retroactively applied, in denying [petitioner] parole." See Shaffer v. Meyers, 163 Fed. Appx. 111, 114 (3d Cir. 2006). Initially, it is noted that, unlike the 2001 and 2002 parole denials, the Board's 2006 Notice of Decision does not parrot the "fair administration of justice" language from the post-1996 statute. See id. Rather, the 2006 Board notice uses language consistent with the pre-1996 parole statute: "your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled."[15]  See Notice of  Bd. Decision 9/1/06, at 1 (caps omitted).

In addition, the Board indicated that "[t]he reasons for [its] decision include[d] the following: (1) Wolfe's "minimization/denial of the nature and circumstances of the offense(s) committed;" (2) Wolfe's "refusal to accept responsibility for the offense(s) committed;" (3) Wolfe's "lack of remorse for the offense(s) committed;" (4) Wolfe's "unacceptable compliance with prescribed institutional programs;" (5) Wolfe's "need to participate in and complete additional institutional programs;" and (6) Wolfe's "interview with the hearing examiner and/or Board member." See Notice of Bd. Decision dated 9/1/06, at 1 (caps omitted).  The Board

---

15. The pre-1996 parole statute read as follows:
> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Inmates of Pa. DOC, 484 F. Supp.2d at 361 n.4.

further indicated that "[Wolfe] will be reviewed in or after August, 2008" and that at the next interview, the Board will review Wolfe's file and consider: (1) "whether [Wolfe] ha[s] successfully participated in a treatment program for: sex offenders;" (2) "whether [Wolfe] ha[s] maintained a favorable recommendation for parole from the [DOC];" and (3) "whether [Wolfe] ha[d] maintained a clear conduct record and completed the [DOC] prescriptive program(s)." Id. (caps omitted).  As the Court of Appeals stated in Shaffer, "[p]rima facie it does not seem likely that the criteria cited by the Board in [petitioner's] case - participation in a treatment program for sex offenders, the recommendation of the [DOC], [petitioner's] conduct record and whether he completed any prescribed programs - would not have been considered by the Board pre-amendment, and [petitioner] cites no evidence to persuade [the Court] otherwise." See Shaffer, 163 Fed. Appx. at 114.

Even assuming arguendo that Wolfe was able to satisfy the first prong of the ex post facto analysis by showing that the Board used criteria different from the pre-amended parole statute, petitioner "has not provided adequate reasons to support the contention that application of those criteria would likely have resulted in [Wolfe's] release on parole." See, e.g., id.; see also Inmates of Pa. DOC, 484 F. Supp.2d at 366.  The reasons set forth by the Board for denying parole to Wolfe "are entirely in line with the pre-1996 requirements of the Parole Act." See McCole, 2006 WL 2792212, at *4.  In light of Wolfe's history as a convicted rapist of an eight-year-old girl, see Inmates of Pa. DOC, 484 F. Supp.2d at 360, the factors cited by the Board in support of the denial of parole, including Wolfe's failure to successfully complete an SOP, lack of remorse for the offense committed, and refusal to accept responsibility for the offense committed, see Notice of Bd. Decision dated 9/1/06, at 1, would have been applicable at the time of sentencing.  See

Inmates of Pa. DOC, 484 F. Supp.2d at 360 (citing cases); see, e.g., Smythe, 2007 WL 2972586, at *8; Burkholder v. Wolfe, 2007 WL 90427, at *10 (M.D. Pa. Jan. 9, 2007); Tyler v. Gillis, 2006 WL 2038398, at *7 (M.D. Pa. July 19, 2006); McCoy v. PBPP, 2006 WL 59329, at *5 (M.D. Pa. Jan. 10, 2006).

Furthermore, Wolfe has adduced no evidence which might tend to establish that parole would have been granted under the Parole Act prior to the 1996 amendment.  See, e.g., Smythe, 2007 WL 2972586, at *10.  Among other things, petitioner has failed to provide evidence "that [Wolfe] would have been a good candidate for parole under the old law" or "the extent to which the reasons given for denying [petitioner] parole would not have been considered before 1996." Id. (quoting Taylor, 181 Fed. Appx. at 255); see Taylor, 181 Fed. Appx. at 255 (citing Richardson, 423 F.3d at 292-93).  Since Wolfe has failed to demonstrate that, as applied here, laws enacted after petitioner was sentenced "created a significant risk of increasing [petitioner's] punishment," see Richardson, 423 F.3d at 292 (quoting Garner, 529 U.S. at 255), his ex post facto claims are clearly without merit.  See Smythe, 2007 WL 2972586, at *10; see also Burkholder, 2007 WL 90427, at *10.

To the extent that Wolfe specifically claims that his right against ex post facto laws was violated because in denying Wolfe parole the Board allegedly applied the Registration of Sexual Offenders Act, better known as Megan's Law, that claim is clearly without merit.  On October 24, 1995, Pennsylvania's Registration of Sexual Offenders Act ("Megan's Law I"), 42 Pa. C.S. §§ 9791-9799, was enacted.  See Bleacher v. Rivers, 2007 WL 515529, at *1 (E.D. Pa. Feb. 12, 2007).  Subsequently, on May 10, 2000, Megan's Law was amended ("Megan's Law II"),

effective July 9, 2000, 42 Pa. C.S. §§ 9791-9799.7.[16]  See Washington v. Patrick, 2007 WL

3231705, at *2 (E.D. Pa. Oct. 30, 2007); see also Lines v. Wargo, 271 F. Supp.2d 649, 655

(W.D. Pa. 2003).  Megan's Law involves registration and notification requirements for certain

sex offenders.  See Commonwealth v. Williams, 832 A.2d 962, 966 (Pa. 2003).  As petitioner

has not yet been paroled or released from incarceration, these provisions clearly had no impact on

petitioner's 2006 denial of parole.  See, e.g., McGarry v. PBPP, 819 A.2d 1211, 1214-15 (Pa.

Commw. 2003).

Furthermore, the registration, notification, and counseling provisions of Megan's Law do

not constitute criminal punishment for ex post facto purposes.  See Artway v. Att'y Gen. of N.J.,

81 F.3d 1235, 1253 (3d Cir. 1996) (holding that sex offender registration does not violate the Ex

Post Facto Clause); see also Williams, 832 A.2d at 984 (citing Allen v. Illinois, 478 U.S. 364,

368-69 (1986)) (Megan's Law's registration, notification, and counseling provisions do not

constitute punishment); Commonwealth v. Gaffney, 733 A.2d 616, 336-337 (Pa. 1999)

(registration and notification provisions of Megan's Law do not constitute punishment for

purposes of the Ex Post Facto Clause).  Moreover, Megan's Law "does not alter any standards

for [petitioner's] eligibility for parole," see McGarry, 819 A.2d at 1214-15; Wongus, 2004 WL

1918787, at *8.  Since Wolfe is unable to show that the Board applied Megan's law to the 2006

parole application and that application of Megan's Law "personally disadvantaged [Wolfe] by

significantly increasing the risk of being denied parole," see Inmates of Pa. DOC, 484 F. Supp.2d

at 364 (citing Richardson, 423 F.3d at 291) (emphasis added); see also Smythe, 2007 WL

2972586, at *8 (citing Richardson, 423 F.3d at 287-88), any claim that application of Megan's

---

16.  Megan's Law I and its amendments are referred to collectively herein as "Megan's Law."

Law made the denial of Wolfe's parole in 2006 unconstitutional under the Ex Post Facto Clause is clearly without merit.

To the extent that Wolfe claims that in denying parole the Board improperly applied Pennsylvania's DNA Detection of Sexual and Violent Offenders Act ("DNA Act"), 44 Pa. C.S.A. §§ 2301-2366, in violation of the Ex Post Facto Clause, that claim is also clearly without merit. The DNA Act requires that any person convicted of a felony have a DNA sample drawn. See Johnson v. PBPP, 163 Fed. Appx. 159, 162 (3d Cir. 2006) (citing 44 Pa. C.S.A. §§ 2303, 2316(a)). "The samples are to be used 'only for law enforcement identification purposes or to assist in the recovery or identification of human remains from disasters or for other humanitarian identification purposes.'" Johnson, 163 Fed. Appx. at 162 (citing 44 Pa. C.S.A. § 2318(c)).

The Third Circuit has found such an ex post facto argument "frivolous." See Johnson, 163 Fed. Appx. at 162. Specifically, "[a]pplication of [the Court's] rationale in Artway - where [the Court] held that sex offender registration does not violate the ex post facto clause - makes clear that collection of a DNA sample to be used for future investigation and identification purposes cannot be punishment that implicates the clause." Id. (citing Artway, 81 F.3d at 1264-67). Thus, the requirement imposed by the DNA Act is "a non-penal, administrative requirement that does not run afoul of the ex post facto clause." See Johnson, 163 Fed. Appx. at 162; Dial v. Vaughn, 733 A.2d 1, 4-5 (Pa. Commw. 1999); see, e.g., Gilbert v. Peters, 55 F.3d 237, 239 (7th Cir. 1995) (stating that "[b]oth federal and state courts have uniformly concluded that statutes which authorize collection of blood specimens to assist in law enforcement are not penal in nature"). Nor is the "denial of parole for refusal to comply with the Act's sample collection requirements ex post facto." See Johnson, 163 Fed. Appx. at 162; Jones v. Murray, 962 F.2d

302, 309 n.3 (4th Cir. 1992), cert. denied, 506 U.S. 977 (1992).


E.   **Fifth Amendment Claim**

Wolfe also contends that the 2006 denial of parole violated Wolfe's Fifth Amendment right against self-incrimination, made binding on the Parole Board through the Fourteenth Amendment, insofar as denial was based on the refusal to accept responsibility for the offenses of conviction.  However, the Fifth Amendment is not violated when a prison inmate's refusal to admit guilt results in a denial of parole.  See Ainsworth v. Stanley, 317 F.3d 1, 5 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003); see also  Thorpe v. Grillo, 80 Fed. Appx. 215, 219 (3d Cir. 2003), cert. denied, 542 U.S. 924 (2004); Elrahman v. Rozum, 2007 WL 1462027, at *3 (E.D. Pa. May 17, 2007).  In that "the parole proceeding that [petitioner] challenge[s] is voluntary in nature" and Wolfe's "decision to remain silent risked no additional penalty as that concept has been understood by the . . . Third Circuit[]," the "Board did not violate [petitioner's] Fifth Amendment rights when part of its reason for denying [petitioner] parole related to [the] refusal to accept responsibility for [the] offenses of conviction."  See Elrahman, 2007 WL 1462027, at *3; Burkholder, 2007 WL 90427, at *6 (citing Wolfe, 334 F. Supp.2d at 773); see also Ainsworth, 317 F.3d at 5; Thorpe, 80 Fed. Appx. at 219; DeFoy, 2007 WL 2903922, at *6-8 (finding without merit petitioner's claim that his Fifth Amendment right against self-incrimination had been violated because, as a prerequisite to obtaining consideration for parole, he was required to complete an SOP that would have compelled him to admit to committing sex offenses of which he denies guilt).  Accordingly, Wolfe's Fifth Amendment claim is clearly

without merit, and the habeas petition should be denied and dismissed.[17]

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue.  "A [COA] should issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'"  United States v. Drake, 38 Fed. Appx. 698, 699 (3d Cir. 2002) (quoting 28 U.S.C. § 2253(c)(2)); see Miller-EL v. Cockrell, 123 S. Ct. 1029, 1039 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000).  To establish this, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack, 529 U.S. at 484; see Miller-EL, 123 S. Ct. at 1040; Drake, 38 Fed. Appx. 698,

---

17.  Wolfe also appears to claim violations of the Emoluments Clause, see U.S. Const. Art. I, § 9, and the Contracts Clause, see id. Art. I, § 10.  See Petr.'s Reply Br. at 5-8.  Liberally construing Wolfe's claims, petitioner appears to argue that the Emoluments Clause and the Contracts Clause were violated **as a result of** the alleged violations of the Ex Post Facto Clause.  Id.; see, e.g., Petr.'s Reply Br. at 5 (claiming "Emolument [sic] Clause violations" since the Board "illegally and intentionally" applied ex post facto laws in denying petitioner parole "for no other reason for [sic] personal gains and for job security"); id. at 8 (claiming the "Board has illegally executed contracts and agreements by retroactively applying" ex post facto laws to petitioner).  In addition to the fact that petitioner appears to allege no circumstances under which the Emoluments Clause or the Contracts Clause have been violated, even assuming arguendo that petitioner's conclusory logic was valid, since his ex post facto claims (and Fifth Amendment claim) are without merit, it appears that even under petitioner's logic, his Emoluments Clause and Contracts Clause claims are without merit.  In any event, petitioner's allegations support no valid claim under the Emoluments Clause or the Contracts Clause against his continued confinement.  See U.S. Const. Art. I, § 9 ("[N]o Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State."); id. Art. I, § 10 ("No State shall . . . pass any . . . Law impairing the Obligations of Contracts."); U.S. ex rel New v. Rumsfeld, 448 F.3d 403, 410 (3d Cir. 2006) (observing that the Emoluments Clause prohibits receipt of various possible honors or benefits from foreign states), cert. denied, 127 S Ct. 2096 (2007); Partridge v. Davis, 2007 WL 2852340, at *8-9 (E.D. Mich. Sept. 30, 2007) (denying petitioner's claim that refusal to grant parole violated the Contracts Clause).

699.

When a federal court denies a habeas petition on procedural grounds, a COA may not issue unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; **and** (2) whether the district court was correct in its procedural ruling.  Slack, 529 U.S. at 484; see Miller-El, 123 S. Ct. at 1046 (Scalia, J., concurring).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack, 529 U.S. at 484.

Here, for the reasons set forth above, since Wolfe has not made the requisite showing of the denial of a constitutional right and a reasonable jurist could not conclude that the Court would be incorrect in denying and dismissing the habeas petition, a certificate of appealability should not issue.  See Slack, 529 U.S. at 484.

My Recommendation follows.[18]

---

18.  Petitioner is advised that objections to this Report and Recommendation may be filed.  See Local R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

## R E C O M M E N D A T I O N

**AND NOW,** this 25th day of January, 2008, upon consideration of the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 and respondent's opposition thereto, it is hereby **RECOMMENDED** that the habeas petition be **DENIED** and **DISMISSED** and that a certificate of appealability should not issue.



 /s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE